927 So.2d 176 (2006)
Paul STROMMEN, Appellant,
v.
Janet B. STROMMEN n/k/a Janet Puentes, Appellee.
No. 2D05-2647.
District Court of Appeal of Florida, Second District.
April 28, 2006.
*177 Lorena L. Kiely of Law Office of Lorena L. Kiely, Tampa, for Appellant.
J. Stanford Lifsey of J. Stanford Lifsey, P.A., Tampa, for Appellee.
VILLANTI, Judge.
Paul Strommen, the Former Husband, appeals an order granting relief from judgment under Florida Rule of Civil Procedure 1.540. The order effectively set aside five years of postjudgment rulings regarding custody and child support in his dissolution of marriage case based on a finding that the circuit court lacked subject matter jurisdiction over the proceedings solely because the Former Husband did not file a Uniform Child Custody Jurisdiction Act (UCCJA)[1] affidavit as required by section *178 61.132, Florida Statutes (2000),[2] when he sought a modification of the final judgment. Because Janet Strommen, the Former Wife, failed to even allege that the factual bases supporting subject matter jurisdiction were absent when the Former Husband sought modification, we conclude that she failed to establish a basis for a collateral attack of this judgment and, therefore, reverse. We discuss and distinguish Ruble v. Ruble, 884 So.2d 150 (Fla. 2d DCA 2004); Kochinsky v. Moore, 698 So.2d 397 (Fla. 4th DCA 1997); Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991); Perez v. Perez, 519 So.2d 1104 (Fla. 3d DCA 1988); and Mouzon v. Mouzon, 458 So.2d 381 (Fla. 5th DCA 1984).
In 1995, the Hillsborough County Circuit Court entered a final judgment of dissolution of marriage dissolving the parties' marriage and setting forth a rotating custody arrangement for the parties' son, who was then seven years old. This custody arrangement had the son moving every two years  he would live with the Former Husband during the week for two years, visiting the Former Wife on weekends and during vacation. During the next two years, the son would live with the Former Wife during the week, visiting the Former Husband on weekends and during vacation. In the fall of 2000, the Former Husband filed a petition to modify the final judgment, alleging that the rotating custody arrangement was no longer tenable and requesting that he be designated the primary residential parent. The Former Husband specifically alleged that he had relocated to north Florida and the Former Wife was living in Clearwater. In February 2001, the Former Wife filed a counterclaim for modification of the final judgment, in which she sought primary residential responsibility for the child. Apparently, neither party thought to file a UCCJA affidavit, as required by section 61.132, at any time during these proceedings. Neither party sought to dismiss the case for failure to file the UCCJA affidavit nor sought a transfer of venue.
Between 2002 and 2003, the Hillsborough County Circuit Court granted the Former Husband's petition, designated the Former Husband as the primary residential parent for the child, and required the Former Wife to pay $600 per month in child support. As recently as November 29, 2004, the circuit court held that the Former Wife was delinquent in her support obligations and entered a judgment against her for $18,084.69 for child support arrears and attorney's fees and costs.
After having received numerous unfavorable rulings, the Former Wife's attorney filed a motion for relief from judgment on January 17, 2005, pursuant to rule 1.540. The rule 1.540 motion argued that the Hillsborough County Circuit Court lacked subject matter jurisdiction over the modification proceedings because no UCCJA affidavit had been filed. Citing Ruble, 884 So.2d 150, the trial court ultimately agreed, granted the motion, and set aside all of the orders regarding custody and child support entered in the post-judgment proceedings.[3]
*179 Subject matter jurisdiction  the "power of the trial court to deal with a class of cases to which a particular case belongs"  is conferred upon a court by constitution or by statute. Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179, 181 (Fla.1994); Jesse v. State, Dep't of Revenue ex rel. Robinson, 711 So.2d 1179 (Fla. 2d DCA 1998). It cannot be conferred by waiver, acquiescence, or agreement of the parties. Ruble, 884 So.2d 150. A trial court's lack of subject matter jurisdiction makes its judgments void,[4] and a void judgment can be attacked at any time, even collaterally. Fla. R. Civ. P. 1.140(h); Gonzalez v. Gonzalez, 654 So.2d 257 (Fla. 3d DCA 1995).
There is no question that the circuit courts in Florida generally have subject matter jurisdiction in cases involving dissolution of marriage or the modification of judgments dissolving marriages so long as certain factual prerequisites regarding the parties are established. See §§ 26.012(2)(c), 61.043(1), 61.13(2)(c), Fla. Stat. (2000). The relevant statutory provisions regarding subject matter jurisdiction to modify child custody or child support in a dissolution judgment are found in sections 61.13(1)(a) and 61.13(2)(c). Section 61.13(1)(a) provides in pertinent part: "The court initially entering an order requiring one or both parents to make child support payments shall have continuing jurisdiction after the entry of the initial order to modify the amount and terms and conditions of the child support payments." See also § 88.2051, Fla. Stat. (2000). Section 61.13(2)(c) provides: "The circuit court in the county in which either parent and the child reside or the circuit court in which the original award of custody was entered have jurisdiction to modify an award of child custody." See also Poliak v. Poliak, 235 So.2d 512, 514 (Fla. 2d DCA 1970) (holding the law of Florida "is well settled" that a circuit court retains continuing exclusive jurisdiction to modify its custody orders, including visitation privileges, until such time as the minor children reach their majority).
Further provisions regarding subject matter jurisdiction in child custody proceedings are found in the UCCJA, sections 61.1302-61.1348, Florida Statutes (2000). Under section 61.1308(1), a court of this state has "jurisdiction to make a child custody determination by initial or modification decree" if certain requirements regarding the child's residency or presence in the state are met. The UCCJA also recognizes the exclusive continuing jurisdiction of a state court that issues an initial custody decree. See Yurgel v. Yurgel, 572 So.2d 1327, 1332 (Fla.1990) (stating "jurisdiction must be presumed to continue once it is validly acquired under section 61.1308; and it continues up until a Florida court expressly determines on some other basis that jurisdiction no longer is appropriate, until virtually all contacts with Florida have ceased"); Steckel v. Blafas, 549 So.2d 1211, 1213-14 (Fla. 4th DCA 1989) (quoting the reporter for the committee that prepared the UCCJA, Professor Bodenheimer, as stating, "Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to *180 reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required. Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, 14 Fam. L. Q. 203, 214-215 (1981).").
Such subject matter jurisdiction must be properly invoked and perfected. See Fla. Power & Light Co. v. Canal Auth., 423 So.2d 421, 423 (Fla. 5th DCA 1982) (citing Cortina v. Cortina, 98 So.2d 334 (Fla.1957)). "A court's jurisdiction is generally invoked in a given case by a party filing a proper pleading which alleges material facts demonstrating (1) the existence of a judicial controversy ... within the subject matter jurisdiction of the court and (2), when a binding judicial determination requires the court to act directly on an object (a res), that such court has, or can acquire, jurisdiction over such res." Id. at 423-24 (footnote omitted). In this case, there is no dispute that the parties properly invoked the Hillsborough County Circuit Court's subject matter jurisdiction to enter a judgment of dissolution in 1995. The only question is whether they properly invoked the court's subject matter jurisdiction to modify that judgment. See Geiger v. Geiger, 632 So.2d 693, 696 (Fla. 1st DCA 1994) (discussing a party's failure to properly invoke the subject matter jurisdiction of the trial court to modify a judgment by failing to raise the subject of modification in an appropriate pleading).
The Former Husband filed a pleading requesting modification of the final judgment of dissolution. In his pleading, the Former Husband alleged that a final judgment of dissolution had been entered by the same court in 1995, that the parties' rotating custody arrangement was not working, and that the Former Husband had moved to north Florida and the Former Wife to Clearwater. The Former Husband sought primary residential responsibility, a visitation schedule for the Former Wife, and child support. This pleading alleged material facts demonstrating the existence of a judicial controversy within the subject matter jurisdiction of the court. The Former Wife's rule 1.540 motion, however, argued that the circuit court that entered the dissolution judgment lacked subject matter jurisdiction over the modification proceedings because the Husband failed to file the affidavit required by section 61.132.
Section 61.132(1) requires that "[e]very party in a custody proceeding, in his or her first pleading or in an affidavit attached to that pleading" give certain information under oath regarding the residency of the child and any other custody proceedings. Admittedly, there seems to be confusion surrounding the UCCJA affidavit requirement and its role in determining subject matter jurisdiction  confusion created by the broadly written language of at least one case from this court, Ruble, and cases from the other district courts of appeal, Kochinsky, Walt, Perez, and Mouzon. Tracing the language of Ruble to its source is helpful in analyzing the effect of section 61.132 on subject matter jurisdiction.
In Ruble, this court reversed a trial court's order denying a wife's motion to vacate a default final judgment entered against her, primarily because of due process concerns  she had never been served with notice and the trial court awarded custody of the child to the Husband, who had never requested custody in his pleadings. After discussing these errors, this court also noted that neither party had filed a UCCJA affidavit, even though the initial pleadings reflected that the wife and child were residing in California. This court noted:

*181 Section 61.132(1) requires every party in a custody proceeding in his or her first pleading or in an affidavit attached to that pleading to give information under oath concerning the child's custodians and residences during the past five years and any other proceedings involving the custody of the child. The husband gave none of the above information in his petition filed in 1998, nor at any time before the final judgment was entered. The failure to provide this sworn evidence deprives the court of subject matter jurisdiction and renders the custody provisions of the final judgment unenforceable. See Kochinsky v. Moore, 698 So.2d 397 (Fla. 4th DCA 1997) (holding that compliance with the affidavit requirements of the UCCJA is mandatory). "The filing of the affidavit after the entry of the order does not cure the jurisdictional defect created." Id. at 399. Without that affidavit, the husband did not obtain an enforceable order.
Ruble, 884 So.2d at 152. In Ruble, this court further noted that the wife's admission of jurisdiction in her counterpetition was "irrelevant" because "[s]ubject matter jurisdiction is conferred upon a court by the constitution or by statute and cannot be created by waiver, acquiescence or agreement of the parties" and that "[t]he lack of subject matter jurisdiction can be raised as a defense at any time." Id. In Ruble, this court reversed but remanded for further proceedings, noting, "On remand the trial court, in determining the child's primary residence, must consider the best interest of the child. . . ." Id. at 153. This court, therefore, seemingly anticipated a cure to the so-called "jurisdictional defect" and the continuation of the custody proceedings. This court did not require the case be dismissed and the parties to begin again with new pleadings. Id.
Ruble relied almost entirely on Kochinsky. In Kochinsky, 698 So.2d 397, the Fourth District reversed an order awarding temporary custody of a child to a mother who was residing in the state of Virginia and had not filed a UCCJA affidavit. Noting that the residence of the parties in different states created the "potential for an interstate conflict," the Fourth District concluded that "compliance with the requirements of the UCCJA is essential to creating an enforceable order which will be honored by both states." Id. at 399. Relying on Walt, 574 So.2d 205, the Kochinsky court called the failure to file the UCCJA affidavit a "jurisdictional defect" that could be cured only by reversing the order and remanding. On remand, the court could enter new orders after considering a UCCJA affidavit filed pending appeal.
In Walt, 574 So.2d 205, the First District considered whether it should recognize a Mississippi custody decree and enforce it by permitting the father to obtain habeas corpus relief in the form of the recovery of the custody of his son in Florida. The First District refused to recognize or enforce the Mississippi decree based upon its conclusions that (1) the decree was not obtained in compliance with the UCCJA because the father had not filed a timely UCCJA affidavit in that jurisdiction and (2) the decree was entered without a valid basis for jurisdiction under the UCCJA's provisions. The court stated, "There is no question that an unexcused failure to file the information requested by section 61.132 leaves the court without jurisdiction to enter a valid child custody order under the UCCJA." Id. at 212. Walt relied on Perez, 519 So.2d 1104, and Mouzon, 458 So.2d 381. However, in Perez, the party's failure to file a UCCJA affidavit was not called a jurisdictional defect. Rather, it was the failure of the *182 complaint to allege that either party was a resident of Florida for the statutory period that deprived the court of subject matter jurisdiction. In Mouzon, 458 So.2d 381, the Fifth District found that a judgment of dissolution was void for lack of jurisdiction. The complaint's failure to adequately allege a basis for long-arm jurisdiction voided any service of process, resulting in a lack of in personam jurisdiction over the respondent husband. And, according to Mouzon:
Neither does the complaint or any affidavit attached to it show any of the jurisdictional requirements of section 61.132 or 61.1308, Florida Statutes (1981), so as to vest the court with custody jurisdiction, nor does the complaint even allege that the children reside in Florida, so there is no basis upon which the court could have acquired jurisdiction over the children.
Id. at 383. This statement in Mouzon, which seems to be the source of the confusion, was made with no citation to any legal authority. It implies that both sections 61.132 and 61.1308 contain "jurisdictional requirements." However, a plain reading of the statutes reveals otherwise. Section 61.1308 contains the jurisdictional provisions. Section 61.132 contains the vehicle by which a party provides the information necessary to determine jurisdiction. Significantly, section 61.132 says nothing about jurisdiction, although the information it requires to be provided to the court (information about whether the party has participated in any capacity in any litigation concerning custody of the same child, about any custody proceeding concerning the child pending in any court, and about any nonparty's interest in custody or visitation) is often key in making a determination of whether the court has subject matter jurisdiction under section 61.1308, and if so, whether it should decline to exercise its jurisdiction under section 61.1316. Therefore, failing to file the section 61.132 affidavit may severely hinder the court's ability to make a determination of jurisdiction. However, failing to file the section 61.132 affidavit is not in itself fatal to jurisdiction, despite the concededly broad language of Mouzon and its progeny. For example, in In re T.L. v. State, Department of Health & Rehabilitative Services, 392 So.2d 288 (Fla. 5th DCA 1980), the Fifth District found that failure to file the UCCJA affidavit did not deprive a court of subject matter jurisdiction because there was sufficient information from which the court could determine that it had jurisdiction. Clearly, failing to file the UCCJA affidavit is a pleading deficiency. As such, it makes the pleading subject to a motion to dismiss. But, it does not automatically deprive the court of jurisdiction, void the court's judgments, and subject the judgments to collateral attack. Therefore, Ruble's holding was no doubt limited to its facts  the wife in Ruble was entitled to relief from judgment not simply because the husband failed to comply with section 61.132 but because the factual basis for Florida's subject matter jurisdiction was called into question in light of the wife and child's residence in California.
Additionally, in Ruble, Walt, Perez, and Mouzon, the failure to file a UCCJA affidavit was not the sole basis for reversal. In Ruble, the due process considerations played a significant role in reversing a custody determination. In Walt, the First District concluded that there was no valid basis for an out-of-state court's exercise of jurisdiction even if the father had filed an accurate UCCJA affidavit. In Perez, the court reversed for numerous due process concerns. In Mouzon, the Fifth District concluded that a default final judgment must be reversed when personal jurisdiction was not acquired over the husband, who was served out of state. Also, none of *183 these cases involved a circuit court's modification of its earlier judgment of dissolution, in which jurisdiction is presumed to continue absent a complete loss of contacts in Florida. Yurgel, 572 So.2d at 1332.
Therefore, we decline to stretch the holdings of these cases to the circumstances presented here, in which (1) the circuit court had entered an initial final judgment involving custody and support and thus maintained continuing exclusive jurisdiction over the cause absent some event that would have divested the court of jurisdiction; (2) there was no indication that such an event had occurred as the pleadings alleged that both parties and the child continued to reside in Florida; and (3) the Former Wife failed to raise the pleading deficiency during the proceedings and on direct appeal of the custody determination.
We note that although Florida cases in general have blurred the distinction between the consequences of a party failing to satisfy a formal pleading requirement and a court failing to actually have a factual basis for subject matter jurisdiction, other courts have not. For example, in Bell v. Bell, 987 S.W.2d 395 (Mo.Ct.App.1999), the court discussed section 452.450, Missouri Revised Statutes (1994), which codifies the UCCJA jurisdictional provisions, and section 452.480, which codifies the UCCJA affidavit requirement. In Bell, the court noted that
"[a]lthough [section] 452.480 requires that parties in child custody proceedings furnish certain information in their pleadings or by affidavit, that requirement is not jurisdictional.
. . . .
Section 452.450 sets forth certain jurisdictional requirements. It contains no reference to section 452.480. Expressio unius est exclusio alterius. Jurisdiction attaches when the requirements of [section] 452.450 are met, not [section] 452.480."
Id. at 398 (quoting In re Marriage of Gohn, 639 S.W.2d 413, 414 (Mo.Ct.App. 1982)); see also Reed v. Reed, 62 S.W.3d 708, 711 (Mo.Ct.App.2001) ("It is true that [section] 452.480 requires that the petitioner include pleading information in a petition where child custody is an issue. But this requirement is separate and distinct from the jurisdictional requirement of the UCCJA.") (footnote omitted).
We do not by any means intend to downplay the importance of filing a UCCJA affidavit in any case involving a child custody determination. Ruble, Kochinsky, Walt, Perez, and Mouzon are correct in underscoring the UCCJA affidavit's importance. As the cases point out, section 61.132 contains mandatory language that every party in a custody proceeding "shall" give the information required by the statute  which is why when a party to a custody proceeding fails to allege such information, that party's pleadings may be the subject of a proper motion to dismiss, and the opposing party may raise the pleading deficiency in defense of any request for custody. See generally Fla. Power & Light Co., 423 So.2d 421 (discussing the differences between a pleading deficiency and lack of subject matter jurisdiction).
Further, a court armed with the information required by section 61.132 can easily make an accurate decision as to whether it has a factual basis for subject matter jurisdiction under section 61.1308, and if so, whether jurisdiction should be declined. As stated in Walt, 574 So.2d at 211, "An important purpose underlying the requirement . . . is to insure that the information is made known not only to the court but also to the adverse party by timely service, so that both can determine the basis for the court's exercise of jurisdiction *184 of the child custody issue." Because the UCCJA framework requires courts to recognize custody decrees of other states when the sister state assumed jurisdiction "under factual circumstances meeting the jurisdictional standards of the act," the filing of a proper UCCJA affidavit will strengthen any decree against a jurisdictional challenge made in another state. § 61.1328, Fla. Stat. (2000); Kochinsky, 698 So.2d at 398. A court that has considered all of the information in section 61.132 is more likely to have properly exercised jurisdiction, and its order is therefore more likely to be enforceable in other states. Given these concerns, a circuit court would be wise to ensure compliance with section 61.132 in all cases, even in the absence of the issue being raised by a party.
Here, to attack the subject matter jurisdiction of the circuit court's judgments, the Former Wife must at least allege that the factual bases supporting subject matter jurisdiction were absent; because the circuit court is presumed to have continuing jurisdiction and the Former Husband sufficiently invoked the court's subject matter jurisdiction in his petition for modification, the Former Wife alleging only that the UCCJA affidavit is missing is not enough to render the circuit court's judgments void and subject to collateral attack. Accordingly, we reverse the trial court's order granting the Former Wife relief under rule 1.540 and remand for the trial court to reinstate the orders it set aside.
Reversed and remanded.
FULMER, C.J., and ALTENBERND, J., Concur.
NOTES
[1] The Uniform Child Custody Jurisdiction Act applies to this proceeding. It was repealed and replaced by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), effective October 1, 2002. However, the UCCJA continues to apply to all custody proceedings filed before the UCCJEA's effective date. See § 61.542, Fla. Stat. (2002).
[2] Section 61.132 was repealed by chapter 2002-65, section 7, at 870, Laws of Florida, effective October 1, 2002. That section has been replaced by section 61.522.
[3] We note the son recently turned eighteen years old, and therefore, his custody is no longer at issue. We refrain from commenting on the other ramifications of the trial court's order granting relief from judgment, including its effect on the Former Wife's delinquent child support payments.
[4] "If a court has jurisdiction in a case but simply errs in its decision, its action is merely voidable and, if not timely corrected, is final and binding. In contrast, when a court acts without jurisdiction, its action is void and subject to collateral attack." Fla. Power & Light Co. v. Canal Auth., 423 So.2d 421, 423 n. 5 (Fla. 5th DCA 1982).